***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS *Page 2 
1. January 31, 2008 is the date of the injury which is the subject of this matter.
2. On January 31, 2008, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
3. On January 31, 2008, an employment relationship existed between the parties.
4. On January 31, 2008, defendant employed three or more employees.
5. Defendant is self-insured, and Corvel Corporation is the third-party administrator.
6. Plaintiff's average weekly wage is $460.96.
7. Defendants filed a Form 63 dated March 7, 2008 and began paying plaintiff workers' compensation benefits without prejudice.
8. Defendants accepted the compensability of plaintiff's January 31, 2008 work injury with respect to her "cervical strain" via a Form 60 dated April 14, 2008.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 1. North Carolina Industrial Commission forms and filings;
 2. Plaintiff's recorded statement;
 3. Plaintiff's medical records;
 c. Stipulated Exhibit Three: Video of January 31, 2008 work injury;
 d. Stipulated Exhibit Four: Additional medical records of plaintiff;
 e. Stipulated Exhibit Five: Telephone records maintained by defendant regarding plaintiff's absences; *Page 3 
 f. Defendant's Exhibit One: "Supervisor's Assessment of Staff Member" signed by plaintiff and Ms. Jaime Peters Childress on April 2, 2008.
 *********** ISSUES
The issues to be determined are:
1. Whether plaintiff's cervical condition requiring surgical intervention and resulting in a period of disability is related to her January 31, 2008 work injury?
2. Whether plaintiff is entitled to any further workers' compensation benefits?
3. Who should be plaintiff's authorized treating physician?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old and had been employed as an administrative assistant for defendant for approximately eight years. Her duties included answering the telephone, typing and assisting the departmental staff with administrative duties.
2. Plaintiff had a history of treatment to her cervical spine with medications, physical therapy, home exercises and other conservative treatment measures. Beginning on July 19, 2005, Dr. Richard Doud Bey, a neurologist, treated plaintiff for headaches and neck pain. Dr. Bey treated plaintiff conservatively with medications and physical therapy, and by September 6, 2005, Dr. Bey testified plaintiff "was actually pain-free." *Page 4 
3. After a motor vehicle accident in May 2007, plaintiff again presented to Dr. Bey with complaints of a whiplash-like injury to her neck, with pain into her left, more than right, shoulder area and arms. Dr. Bey prescribed additional physical therapy, to which plaintiff responded very well.
4. If he were not able to control a patient's pain with medication and therapy, Dr. Bey testified he would then refer a patient to a surgeon. However, this was not the case with plaintiff, as Dr. Bey was able to effectively control plaintiff's neck pain, and again was "able to get her to be pain free" as of July 11, 2007.
5. On December 4, 2007, plaintiff last presented to Dr. Bey for a severe headache. On that date, plaintiff did not mention her cervical condition and Dr. Bey testified that there was not a problem with her neck.
6. Dr. Bey characterized plaintiff's neck pain as episodic, and that plaintiff would contact his office when she was experiencing neck pain. Plaintiff did not present to Dr. Bey between July 2007 and December 2007 and Dr. Bey did not provide treatment for plaintiff's neck condition after July of 2007.
7. On January 31, 2008, as observed on the CD received into evidence, plaintiff was returning from the mail room at work when her right foot slipped and she fell down on her knees and elbows. Plaintiff felt an immediate onset of pain in her knees and elbows.
8. On January 31, 2008, plaintiff reported her injury to Susan Pendergrass, who worked in Human Relations for defendant.
9. The next day, February 1, 2008, plaintiff experienced pain in her neck and shoulder, with radiation into her right arm. Susan Pendergrass scheduled an appointment for plaintiff with Primary Care in Mount Airy on February 1, 2010, where plaintiff presented to *Page 5 
Dr. Lou Urmos. Plaintiff reported that she fell on her knees and elbows the day before and was now experiencing pain in her shoulders and neck. Plaintiff was diagnosed with a cervical sprain/strain and multiple contusions.
10. On February 14, 2008, plaintiff was evaluated by Dr. Jeffrey Beane, who opined plaintiff's work-related injury aggravated her underlying cervical spondylosis and recommended physical therapy.
11. On March 12, 2008, plaintiff presented to Dr. Courtenay S. Whitman, IV, an orthopedic surgeon. After his initial treatment of plaintiff, Dr. Whitman opined, "I do think that the fall has exacerbated her cervical disc disease." Dr. Whitman recommended conservative treatment, which included medication, physical therapy, activity limitations, a shoulder immobilizer and a TENS unit.
12. When plaintiff did not respond to conservative treatment, Dr. Whitman recommended an EMG of the right upper extremity and an MRI of the cervical spine.
13. A cervical spine MRI was performed on July 11, 2008, and after reviewing the results, Dr. Whitman continued to opine that plaintiff's pre-existing cervical disc syndrome was exacerbated by her work-related injury on January 31, 2008.
14. Dr. Whitman opined that plaintiff's symptoms were related to both her fall and her pre-existing condition. Dr. Whitman testified that his causation opinion was not solely based on a temporal relationship but also plaintiff's condition before the January 31, 2008 work injury, the mechanism of her injury, his examination and plaintiff's complaints.
15. With regard to plaintiff's ongoing symptoms, Dr. Whitman opined, "I think the symptoms were a result of an underlying preexisting condition that was exacerbated by her fall." *Page 6 
16. Upon referral from Dr. Whitman, plaintiff presented to Dr. Craig VanDerVeer, who performed a cervical laminectomy, on April 3, 2009. Plaintiff testified that although she experienced improvement with the pain in her neck and radiation into her right arm, she still continued to experience shoulder pain.
17. Plaintiff was released from work due to her surgery from April 3, 2009 through June 18, 2009.
18. On June 17, 2009, after plaintiff's surgery, Dr. VanDerVeer noted that although plaintiff's condition was due to spondylitic disease in her cervical spine and congenital spinal stenosis, her work injury on January 31, 2008 was an exacerbating factor.
19. Although Dr. VanDerVeer testified that the structural condition, for which he performed surgery, was not related to plaintiff's work-related fall, he admitted that a component of the decision making with regard to her surgery was related to her pain.
20. Dr. VanDerVeer admitted that plaintiff's fall was capable of producing neck pain and that such a fall could cause someone to develop a neck sprain or strain. Dr. VanDerVeer also agreed that plaintiff's work-related fall exacerbated the underlying pain that plaintiff had as a result of the degenerative condition of her spine.
21. Dr. VanDerVeer further testified that plaintiff has cervical spondylitic disease with loss of all of her spinal fluid around her spinal cord. If she falls and "sort of rattles herself around," something that might be minor for a person with a healthier spine could be a spinal cord injury because plaintiff no longer has that buffer of spinal fluid around her spinal cord.
22. Dr. VanDerVeer also testified that it is "causative that [plaintiff's] fall caused her to have an evaluation that identified her spinal cord compression and then we did the surgery." *Page 7 
According to Dr. VanDerVeer, the fall is what brought plaintiff's spinal cord compression to light. Prior to this time, plaintiff's cervical condition had been managed conservatively.
23. On June 8, 2009, plaintiff presented to Dr. Vincent Paul, an orthopedic surgeon, for a second opinion evaluation with regard to plaintiff's work-related injury. Dr. Paul viewed the video of plaintiff's work accident and testified that there was no one who could fall down as plaintiff did without having some jolt not only to the shoulder, but also to her neck.
24. Dr. Paul opined that plaintiff had preexisting cervical degenerative disc disease with stenosis at C3-4 that was quiescent before her work fall on January 31, 2008. Dr. Paul testified that preexisting conditions can be asymptomatic and the nerves can be resting in a narrow opening that is not as large as it should be because of degenerative changes in the spine. After a fall or some sort of acceleration/deceleration type of injury, the nerves become irritated. Dr. Paul opined that plaintiff's work-related fall probably aggravated or accelerated her pre-existing neck condition and made it symptomatic enough to require the surgery she underwent. On cross examination, Dr. Paul changed his testimony to say the fall could aggravate plaintiff's condition. In spite of this change in testimony, taken as a whole, Dr. Paul's testimony causally relates plaintiff's neck symptoms to the January 31, 2008 fall at work.
25. Plaintiff testified that although she may have experienced neck and arm pain on an intermittent basis prior to her work injury on January 31, 2008, periodic conservative treatment resolved her symptoms and she was able to continue to work. After the January 31, 2008 work incident, plaintiff testified that her neck pain was unrelenting and required the cervical laminectomy on April 3, 2009. The Full Commission finds plaintiff's testimony to be credible.
26. Defendant initially accepted plaintiff's claim with the filing of a Form 63 Notice to Employee of Payment of Compensation WithoutPrejudice on March 7, 2008. *Page 8 
27. Subsequently, on April 14, 2008, defendant filed a Form 60 Employer's Admission of Employee's Right to Compensation, accepting a cervical strain.
28. Given the filing of the Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on the Form 60, plaintiff's need for medical treatment for the cervical condition is presumed causally related to the compensable injury by accident. Defendants failed to rebut this presumption by showing that the need for plaintiff's surgery is not causally related to her January 31, 2008 injury by accident.
29. Regardless of the burden of proof, the Full Commission finds that, as the direct and natural result of, and causally related to her January 31, 2008 admittedly compensable injury by accident, plaintiff's pre-existing, non-disabling degenerative cervical condition was aggravated for the worse to the extent that the cervical laminectomy performed on April 3, 2009, was required.
30. The evidence is undisputed that prior to plaintiff's work-related injury on January 31, 2008, she had a history of treatment for her cervical spine, but she had experienced relief with medications, physical therapy, home exercises and other conservative treatment measures.
31. Based on the greater weight of the evidence of record, the Full Commission finds that plaintiff suffered an admittedly compensable injury by accident on January 31, 2008, which resulted in the aggravation of plaintiff's pre-existing, previously non-disabling, cervical condition.
32. Prior to plaintiff's admittedly compensable work injury to her neck on January 31, 2008, plaintiff was not considered for cervical surgery as her neck pain had been successfully managed conservatively. As a result of the aggravation of plaintiff's degenerative cervical *Page 9 
condition, the Full Commission finds that the need for plaintiff's cervical laminectomy is directly related to her compensable injury.
33. As a result of the aggravation of plaintiff's degenerative cervical condition and the need for the cervical laminectomy, plaintiff was medically excused from work from April 3, 2009 through June 18, 2009, when she returned to work for defendant-employer.
34. Plaintiff continues to require occasional treatment for her cervical condition to effect a cure and lessen her period of disability when she experiences a flare-up of her condition.
35. The parties stipulated that plaintiff's average weekly wage is $460.96, which yields a compensation rate of $307.32.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 31, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant involving a specific traumatic incident to her neck. N.C. Gen. Stat. § 97-2(6).
2. Given the filing of the Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on that Form, the Parsons' presumption applies in this matter, thereby making it defendant's burden to prove that the aggravation of plaintiff's degenerative cervical condition and need for the cervical laminectomy are not causally related to her January 31, 2008 injury by accident. Perez v. AmericanAirlines/AMR Corp., 174 NC App. 128, 620 S.E.2d 288 (2005),disc. rev. improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). *Page 10 
Based upon the totality of the credible evidence of record, defendant has failed to meet this burden. Perez v. AmericanAirlines/AMR Corp., supra; Parsons v. Pantry, Inc.,supra.
3. Regardless of the burden of proof, plaintiff has proven that as the direct and natural result of and causally related to her January 31, 2008 admittedly compensable injury by accident, plaintiff's pre-existing, non-disabling cervical condition was aggravated for the worse to the extent that the cervical laminectomy was required. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
4. As a direct and proximate result of plaintiff's admittedly compensable injury by accident on January 31, 2008, plaintiff was unable to earn the same or greater wages as she was earning in the same or any other employment from April 3, 2009 through June 18, 2009, when she returned to work for defendant. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $307.32 per week during this period. N.C. Gen. Stat. § 97-29.
5. As a direct and proximate result of plaintiff's compensable injuries by accident on January 31, 2008, plaintiff is entitled to all medical expenses incurred or to be incurred for her neck, including the cervical laminectomy, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 11 
1. Subject to an attorney's fee hereinafter approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $307.32 per week from April 3, 2009 through June 18, 2009, when she returned to work for defendant.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her neck, including the cervical laminectomy, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: as compensation has accrued, twenty-five percent of the accrued compensation shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of June 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 CONCURRING: S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1